```
1                    THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3                      HONORABLE JANIS L. SAMMARTINO
                   UNITED STATES DISTRICT JUDGE PRESIDING
4

5       ------------------------------------------------------------

6    UNITED STATES OF AMERICA,     )  NOVEMBER 10, 2015
                                   )
7                   PLAINTIFF,     )
                                   )
8    VS.                           )  NO. 14-CR-3668-JLS
                                   )
9    DANIELLE TRINITTI KOWNACKI,   )
                                   )  SENTENCING HEARING
10                  DEFENDANTS.    )

11      ------------------------------------------------------------

12

13      FOR THE PLAINTIFF:        RYAN A. SAUSEDO
                                  U.S. ATTORNEY'S OFFICE
14                                SOUTHERN DIST. OF CALIFORNIA
                                  CRIMINAL DIVISION
15                                880 FRONT STREET, SUITE 6293
                                  SAN DIEGO, CA  92101
16

17

18      FOR THE DEFENDANT:        JOHN D. KIRBY
                                  LAW OFFICE OF JOHN KIRBY
19                                THE EXECUTIVE COMPLEX
                                  1010 SECOND AVENUE, SUITE 1850
20                                SAN DIEGO, CA  92101

21

22

23

24

25      THE COURT REPORTER:       GAYLE WAKEFIELD, RPR, CRR
```

```
 1      NOVEMBER 10, 2015

 2                          MORNING SESSION

 3              THE CLERK:  NUMBER 3 ON THE CALENDAR, 14-CR-3668,

 4      UNITED STATES VS. DANIELLE TRINITTI KOWNACKI, FOR SENTENCING.

 5              MR. KIRBY:  GOOD MORNING, YOUR HONOR, JOHN KIRBY ON

 6      BEHALF OF MS. KOWNACKI.

 7              MR. SAUSEDO:  GOOD MORNING, AGAIN, YOUR HONOR, RYAN

 8      SAUSEDO FOR THE UNITED STATES.

 9              THE COURT:  THANK YOU.

10              MR. KIRBY:  YOUR HONOR, MS. KOWNACKI IS NOW PRESENT.

11              THE COURT:  THE COURT HAS READ AND CONSIDERED THE

12      FOLLOWING DOCUMENTS FOR PURPOSES OF SENTENCING THIS MORNING:  I

13      HAVE THE PRESENTENCE REPORT.  THE ADDENDUM TO THE PRESENTENCE

14      REPORT.  I HAVE THE DEFENDANT'S OBJECTIONS TO THE PRESENTENCE

15      REPORT.  DEFENDANT'S SENTENCING MEMORANDUM.  I HAVE A LETTER

16      SUBMITTED BY THE DEFENDANT.  I HAVE A GOVERNMENT'S SENTENCING

17      SUMMARY CHART, AND THE UNDERLYING PLEA AGREEMENT.  IS THAT

18      EVERYTHING?

19              MR. KIRBY:  I BELIEVE IT IS, YOUR HONOR.

20              THE COURT:  WITH REGARD TO YOUR OBJECTION, YOUR

21      OBJECTION IS PRIMARILY WITH REGARD TO THE FINE, CORRECT, MR.

22      KIRBY?

23              MR. KIRBY:  YES, YOUR HONOR.

24              THE COURT:  I'M NOT INCLINED TO IMPOSE A FINE.  I

25      UNDERSTAND THE RECOMMENDATION.  I UNDERSTAND WHY THEY'RE
```

1       SUGGESTING IT.  AT THIS POINT I WOULD NOT BE INCLINED TO

2       INCLUDE A FINE.

3            LET ME TELL YOU A COUPLE OF THOUGHTS -- DID YOU WANT TO

4       SAY SOMETHING, MR. ENGLISH?

5            THE PROBATION OFFICER:  I JUST WANT TO MAKE SURE THAT

6       THE COURT HAD THE SECOND ADDENDUM WHICH ADDRESSED THE

7       OBJECTION.

8            THE COURT:  I HAVE THE ADDENDUM.

9            THE PROBATION OFFICER:  I CAN PROVIDE THE COURT A COPY.

10           THE COURT:  THERE'S A SECOND ADDENDUM?

11           THE PROBATION OFFICER:  YES, IT'S VERY BRIEF.  WOULD

12      THE COURT LIKE A COPY?

13           THE COURT:  YES, PLEASE.  YOU CAN GO AHEAD AND TELL ME

14      WHAT IT SAYS.

15           THE PROBATION OFFICER:  WE JUST STAND ON OUR ORIGINAL

16      RECOMMENDATION AND NOTE THEIR OBJECTION.

17           THE COURT:  SO THE SECOND ADDENDUM RECOMMENDS THE

18      $21,000 FINE.  MY TENTATIVE WOULD BE NOT TO INCLUDE A FINE.

19           IF THIS IS HELPFUL TO YOU, MR. KIRBY, IN ADDRESSING THE

20      COURT, I AM INCLINED AND -- TO GIVE 3 POINTS FOR ACCEPTANCE.  I

21      AM NOT INCLINED TO INCLUDE, DESPITE WHAT HAPPENED IN THIS CASE,

22      MR. KIRBY, AND AGAIN THIS IS A REASONABLE POSITION FOR

23      PROBATION TO HAVE TAKEN, OBSTRUCTION OF JUSTICE.  I AM NOT

24      INCLINED TO INCLUDE THAT, BUT, AGAIN, I WANT TO MAKE IT VERY

25      CLEAR THAT'S NOT AN UNREASONABLE POSITION GIVEN WHAT'S HAPPENED

1    HERE.  I ALSO DON'T BELIEVE THAT GIVEN THE FACTS AND

2    CIRCUMSTANCES THAT YOUR CLIENT BRINGS BEFORE THE COURT THAT

3    MINOR ROLE IS WARRANTED.

4         IF IT'S HELPFUL TO YOU, WHATEVER DISCRETION THIS COURT

5    CHOOSES TO EXERCISE, IF ANY, IN THIS MATTER, AND PROBABLY SOME

6    IS APPROPRIATE, SIR, WOULD BE PURSUANT TO 3553(A), SO I TELL

7    YOU MY THOUGHTS ON THE CALCULATION JUST SO YOU KNOW, MR. KIRBY.

8    GO AHEAD.

9         MR. KIRBY:  I UNDERSTAND, YOUR HONOR.  THANK YOU VERY

10   MUCH.

11        I APPRECIATE THE COURT'S POSITION ON OBSTRUCTION, AS

12   WELL AS ACCEPTANCE.

13        I WOULD URGE THE COURT TO RECONSIDER REGARDING ROLE.

14   THAT IS AN 8-LEVEL SWING IN THIS CASE.

15        THE COURT:  IT IS.

16        MR. KIRBY:  SORT OF THE STANDARD THAT YOU SEE ALL THE

17   TIME IN THESE TYPES OF CASES ARE PRESENT.  MS. KOWNACKI HAD NO

18   OWNERSHIP INTEREST IN THE DRUGS.  SHE WAS NOT INVOLVED IN ANY

19   NEGOTIATIONS FOR THE SALE.  SHE BASICALLY WAS TOLD, "GO HERE

20   AND DELIVER THE DRUGS AND COME RIGHT BACK."

21        THE COURT:  THIS WAS OVER A NUMBER OF TIMES.  THERE WAS

22   A SIGNIFICANT FINANCIAL INTEREST THAT SHE HAD IN WHAT THEY WERE

23   PAYING HER, SO WHEN I LOOK AT HER INVOLVEMENT, THIS WASN'T A

24   ONE-TIME VENTURE.  THIS WASN'T A TWO-TIME VENTURE.  IT WASN'T A

25   THREE-TIME VENTURE, AND THIS WASN'T A COUPLE THOUSAND DOLLARS.

1    YOU DON'T SEE FROM PROBATION OFTEN A RECOMMENDATION FOR A FINE

2    LIKE THAT.

3         MR. KIRBY:  WELL, YOUR HONOR, THAT ORIGINAL

4    RECOMMENDATION WAS PREDICATED ON THE FACT THAT SHE HAD ACTUALLY

5    RETAINED THAT MONEY, WHICH SHE DID NOT.  SHE PAID OFF DEBTS

6    WITH THAT MONEY TO TRY TO GET HERSELF OUT OF HOCK.

7         THE FACT I WOULD LIKE YOUR HONOR TO FOCUS ON FOR A

8    MOMENT IS MS. KOWNACKI OBVIOUSLY HAS A LONGSTANDING DRUG

9    PROBLEM THAT SHE'S FOUGHT OFF INTERMITTENTLY, BUT NOT

10   SUCCESSFULLY.

11        IN THIS PARTICULAR CASE, SHE WAS DOWN IN ROSARITO.

12   THEY ESSENTIALLY KEPT HER DRUGGED ON HEROIN AND ABUSED HER

13   SEXUALLY.  WHEN THEY NEEDED HER TO CROSS, THEY WOULD PUMP HER

14   UP WITH METHAMPHETAMINE SO SHE WOULD BE AWAKE ENOUGH TO GET

15   ACROSS THE BORDER, AND THEN SHE WOULD COME BACK AND COME BACK

16   TO THE HEROIN.  AND THIS WAS SORT OF A CYCLE THAT THEY WERE

17   USING HER IN THIS MANNER, BOTH FOR DRUG CROSSINGS AND FOR OTHER

18   REALLY HORRIBLE THINGS, DURING THE COURSE OF HER TIME DOWN

19   THERE.

20        THE COURT:  I MEAN, I DEFINITELY WILL STRONGLY

21   RECOMMEND RDAP, WHATEVER SENTENCE THE COURT IMPOSES, BECAUSE I

22   THINK SHE WOULD BENEFIT FROM THAT.

23        MR. KIRBY:  SHE WOULD, YOUR HONOR, AND THAT PARTIALLY

24   GOES TO OUR PLACEMENT RECOMMENDATION WE'RE ASKING FOR.  MS.

25   KOWNACKI DID ENTER CRASH.  SHE WAS SUCCESSFUL ALMOST UP TO THE

1    END, THEN WAS ALLOWED TO SEEK EMPLOYMENT, SOUGHT EMPLOYMENT

2    WITH SOME OF THE FOLKS THAT SHE HAD HUNG OUT WITH PREVIOUSLY,

3    AND THAT'S WHAT HAPPENED TO HER AS FAR AS FAILING CRASH.  SHE

4    HUNG OUT WITH THOSE PEOPLE.  THEY GAVE HER DRUGS.  SHE LEFT

5    CRASH, AND THAT WAS WHY SHE PANICKED AND LEFT IN THE FIRST

6    PLACE.

7         YOUR HONOR, I KNOW THE NINTH CIRCUIT CASE LAW ABOUT

8    MERE COURIERS IS NOT GOOD.  I THINK THE FACT THAT SHE WAS FED

9    DRUGS DURING THE COURSE OF THIS -- OF HER PARTICIPATION IS

10   SOMETHING THAT I THINK MAKES HER LESS CULPABLE THAN THE AVERAGE

11   COURIER.  I UNDERSTAND THAT SHE'S DONE THIS -- SHE DID THIS

12   MANY TIMES, BUT I ASK YOUR HONOR TO CONSIDER WHETHER AN 8-LEVEL

13   SWING IN THE GUIDELINES IS REALLY APPROPRIATE IN THIS CASE WITH

14   A YOUNG WOMAN LIKE HER.

15        MY POSITION WOULD BE THAT YOUR HONOR SHOULD START WITH

16   57 MONTHS, NOT 151 MONTHS.  I THINK THAT'S A COMPLETELY

17   UNREASONABLE SENTENCE.  I THINK IT'S UNREASONABLE GIVEN WHAT'S

18   GOING ON IN CONGRESS RIGHT NOW AND THE MOVES AFOOT TO ADDRESS

19   THE SENTENCES IMPOSED FOR NONVIOLENT DRUG OFFENDERS.  MS.

20   KOWNACKI WOULD NOT BENEFIT FROM A LENGTHY PERIOD OF

21   INCARCERATION.  SHE'S GOT A YOUNG CHILD.  SHE DOES HAVE A

22   LONGSTANDING DRUG PROBLEM THAT NEEDS TO BE ADDRESSED, BUT

23   PUTTING HER IN JAIL FOR 72 MONTHS IS TAKING AWAY A BIG CHUNK OF

24   HER LIFE.  IT'S TAKING AWAY A BIG CHUNK OF THE TIME SHE WOULD

25   SPEND WITH HER CHILDREN.  I THINK A MORE REASONABLE SENTENCE OF

1    36 MONTHS WOULD ADDRESS THE ISSUES THAT THE COURT'S CONCERNED

2    WITH, AND THAT IS THE DANGEROUS DRUGS BEING BROUGHT INTO THIS

3    COUNTRY.

4         MS. KOWNACKI ALSO JUST BARELY DID NOT COMPLY WITH THE

5    SAFETY VALVE, BASED UPON A -- BASICALLY ONE DRUG CONVICTION,

6    AND THAT KICKED HER OUT OF THOSE 2 POINTS AS WELL.

7         SO GIVEN ROLE AND GIVEN THE SAFETY VALVE, IF SHE WERE

8    ELIGIBLE, SHE WOULD BE LOOKING AT A 46-MONTH GUIDELINE

9    SENTENCE, WHICH WOULD BE AT LEAST A REASONABLE SENTENCE.  I

10   THINK 72 MONTHS DOES NOT SERVE ANYONE.

11        ASIDE FROM THE FACT THAT SHE IS A BRIGHT YOUNG WOMAN,

12   SHE HAS A PROMISING FUTURE.  I THINK 72 MONTHS IS GOING TO

13   INSTITUTIONALIZE HER AND SHE'S GOING TO COME OUT BASICALLY AS A

14   DRUG FELON AND MAY NOT MOVE PAST THAT.

15        I WOULD NOTE THAT VIRTUALLY THIS ENTIRE COURTROOM ARE

16   FOLKS HERE IN SUPPORT OF HER.  MOST IMPORTANTLY, OBVIOUSLY

17   MICHELLE AND JOSEPH KOWNACKI, WHO HAVE CUSTODY OF HER DAUGHTER,

18   AND HAVE REMAINED SUPPORTIVE OF HER THROUGHOUT.  THERE ARE MANY

19   PEOPLE FROM THE SUPERIOR COURT THAT YOUR HONOR MAY RECOGNIZE.

20        THE COURT:  I SEE SOME FAMILIAR FACES.

21        MR. KIRBY:  AND MANY PEOPLE FROM THE PUBLIC DEFENDER'S

22   OFFICE AS WELL.  SO I THINK YOUR HONOR PROBABLY KNOWS THE

23   MAJORITY OF THE PEOPLE IN HERE, KNOWS THAT THEY'RE GOOD PEOPLE,

24   AND THEY'RE STANDING BEHIND HER.

25        THE COURT:  YOU KNOW, THAT'S NOT THE ISSUE, AND THIS IS

1      A TROUBLESOME CASE BECAUSE OF THAT, AND I'VE READ EVERY PAGE OF

2      THIS FILE PROBABLY MORE THAN ONCE, BUT IT CUTS BOTH WAYS, MR.

3      KIRBY.  I MEAN, THERE ARE SO MANY OTHER PLACES TO TURN FOR YOUR

4      CLIENT THAN THE WAY SHE TURNED BECAUSE SHE HAS A GOOD FAMILY.

5      SHE HAS A GOOD SUPPORT SYSTEM.  MANY OF THE INDIVIDUALS WHO

6      COME BEFORE THE COURT DON'T HAVE ANY PLACE TO TURN, AND SO SHE

7      HAD A SUPPORTIVE FAMILY.  SHE HAD A NETWORK THAT COULD HAVE

8      HELPED ON SO MANY LEVELS.

9          NONETHELESS, I DON'T DISAGREE WITH YOU THAT SOME

10     DISCRETION IS APPROPRIATELY EXERCISED HERE, SIR, WHATEVER THE

11     CALCULATION IS.  IF I FOLLOW THE GUIDELINE CALCULATION THAT THE

12     GOVERNMENT HAS, IT WOULD HAVE TO COME DOWN A HUGE AMOUNT FROM

13     THAT, BELOW WHAT THE GOVERNMENT'S ASKING CERTAINLY, IN THE

14     COURT'S VIEW.

15         AND LET'S BE CLEAR HERE, THIS CASE ORIGINALLY, BEFORE

16     SHE ABSCONDED, WAS AT A DIFFERENT POINT, AND TO SOME EXTENT

17     SHE'S VERY FORTUNATE THAT THERE WEREN'T ADDITIONAL CHARGES

18     BROUGHT OR OTHER THINGS THAT COULD HAVE BEEN BROUGHT.  SO I

19     UNDERSTAND THAT, AND I APPRECIATE EVERYBODY COMING TODAY.

20         MR. KIRBY:  YOUR HONOR, AS FAR AS THE ABSCONDING GOES,

21     I WAS -- I MEAN, SHE ACTUALLY ABSCONDED FROM ME, AND I CAN TELL

22     YOUR HONOR THAT IT WAS A PANICKED REACTION.  I SAW THE PANIC IN

23     HER EYES BEFORE SHE LEFT, AND IT WAS A BAD DECISION, AND SHE

24     KNOWS IT WAS A BAD DECISION, AND SHE ACCEPTS RESPONSIBILITY NOT

25     JUST FOR THE DRUGS BUT ALSO FOR THAT.

1        I JUST WANTED YOUR HONOR TO JUST UNDERSTAND, I KNOW

2   THERE ARE ALL THESE PEOPLE SUPPORTING HER.  I'VE HAD A LOT OF

3   CLIENTS/COURIERS WITH DRUG PROBLEMS.  I HAVE NEVER SEEN

4   ANYTHING LIKE THIS IN MY LIFE.  THE COMBINATION OF THE DRUGS

5   AND ABUSE BY MEN JUST SPANS HER ENTIRE ADULTHOOD.  I WOULD ASK

6   YOUR HONOR TO JUST IMPOSE A SENTENCE THAT'S NOT GOING TO MAKE

7   HER -- MAKE THIS CASE HER DEFINING CHARACTERISTIC IN HER LIFE.

8   THIS IS SOMETHING SHE CAN GET THROUGH.  THIS IS SOMETHING IF

9   SHE CAN GET THE DRUGS OUT OF HER HEAD, THEN SHE CAN HAVE A

10  PROMISING LIFE AHEAD OF HER.

11       I WOULD NOTE THAT MS. KOWNACKI HAS ACTUALLY DONE A LOT

12  OF RESEARCH, HAS ASKED ME TO ASK FOR A RECOMMENDATION TO

13  WASECA.  SHE WANTS TO GET AWAY FROM SOUTHERN CALIFORNIA.

14       THE COURT:  WHERE IS THAT?

15       MR. KIRBY:  IT'S IN MINNESOTA, I BELIEVE.  I HAVE A

16  COUPLE OF CLIENTS THAT ARE THERE RIGHT NOW.  THEY HAVE A DRUG

17  PROGRAM.  THEY ALSO HAVE SEVERAL OTHER PROGRAMS THAT MS.

18  KOWNACKI COULD UTILIZE TO COME OUT WITH SOME SORT OF CAREER

19  OPTIONS, AND SHE'S -- BUT MOST SPECIFICALLY SHE WANTED TO BE

20  AWAY FROM SOUTHERN CALIFORNIA, AWAY FROM THE PEOPLE WHO MIGHT

21  LET HER DROP BACK INTO THAT DRUG SCENE.  HER PARENTS HAVE A

22  PLACE IN PENNSYLVANIA.  THEY CAN RELOCATE THERE TO BE NEAR HER,

23  AND SO THAT'S HER RECOMMENDATION.

24       BUT THE BOTTOM LINE IS, YOUR HONOR, I JUST ASK YOUR

25  HONOR TO TAKE INTO ACCOUNT, WHETHER IT'S VIA ROLE OR VIA 3553,

1    THAT THIS IS A PROMISING YOUNG WOMAN WHO SHOULDN'T BECOME --

2    SHOULDN'T HAVE THIS INCIDENT DEFINE HER WHOLE LIFE.

3         THE COURT:  THANK YOU, MR. KIRBY.  I APPRECIATE THE

4    COMMENTS.

5         MS. KOWNACKI, IS THERE ANYTHING THAT YOU WOULD LIKE TO

6    SAY THIS MORNING, MA'AM, BEFORE SENTENCING?  I DID READ YOUR

7    LETTER, AND I APPRECIATED THAT, BUT YOU CERTAINLY HAVE AN

8    OPPORTUNITY NOW TO SAY ANYTHING ELSE YOU WOULD LIKE TO, MA'AM.

9         THE DEFENDANT:  FIRST, I WOULD LIKE TO SAY GOOD

10   MORNING, YOUR HONOR.  I WOULD LIKE TO SAY MY APPRECIATION TO MY

11   FAMILY AND EXTENDED FAMILY AND FOR THE COST AND MAKING TIME TO

12   BE HERE.  THE ABUNDANT SUPPORT HAS HELPED TO RAISE MY SPIRITS,

13   AND MATURE MY MOTIVATION, AND TRANSFORM A CODEPENDENT ADDICT

14   INTO A HEALTHY DAUGHTER AND MOTHER.

15        I ALSO NEED TO APOLOGIZE FOR BEHAVING AND ACTING SO

16   CARELESSLY AND SELFISHLY IN MY LIFE.  I TRADED IN MY TWO MOST

17   POWERFUL QUALITIES, AMBITION AND PASSION, FOR AN ILL AND TOXIC

18   LIFESTYLE.

19        MISERY BROUGHT ALONG MISERABLE COMPANY, AND I'M ASHAMED

20   OF THE EVIL POSSIBILITY THAT I HAD SPREAD MY SAME DISEASE OF

21   ADDICTION ONTO OTHERS AND ASSISTED IN THEIR DOWNWARD SPIRAL.  I

22   REMEMBER THE FIRST TIME I DID HEROIN.  WHEN MY EYES CAUGHT THE

23   MIRROR, A STRANGER REFLECTED BACK.  THE EMPTY MIRRORED EYES HAD

24   LOST ALL SPARKLE OF LIFE.  I WOULD NEVER WISH THIS UPON ANYONE.

25        I'M APPRECIATIVE THAT THIS EXPERIENCE HAS SAVED ME FROM

1      THAT PERSON.  I REFLECT A LOT THROUGHOUT MY DAY AND FIND IT

2      MOST REWARDING HELPING OTHERS.  ACTIVE ADDICTION IS VERY

3      COMPLEX AND DRAINING.  NOW BEING CLEAN, MY POSITIVE ENERGY CAN

4      TRANSFER INTO MAKING FRIENDS, THOUGHTFUL CONVERSATIONS,

5      PHYSICAL WELLNESS, AND SPIRITUAL GROWTH.  I KNOW I'M A GOOD

6      PERSON WHO WAS RAISED IN AN AMAZING FAMILY WITH PRACTICED

7      BELIEF SYSTEM.  I AM SO GRATEFUL THAT THIS EXPERIENCE HAS GIVEN

8      MY FAMILY A HUGE OPPORTUNITY FOR EVERYONE TO LEARN MORE ABOUT

9      THE OTHER.  THIS IS EXACTLY WHAT I NEEDED, AND IN REALITY THE

10     GOVERNMENT HAS PLAYED A HUGE ROLE IN SAVING MY LIFE.  WORKING

11     ON MY ESTEEM DAILY, I'M SO GRATEFUL TO NO LONGER NEED OUTSIDE

12     VALIDATION TO FEEL GOOD ABOUT MYSELF.

13          I JUST WANTED TO SHARE A QUICK STORY.  I WAS LAYING IN

14     MY BUNK ONE NIGHT AND I OPENED MY EYES AND I SAW MY HAND, AND I

15     INSTANTLY REMEMBERED MY MOM'S HAND.  WHEN I WENT TO CHURCH WITH

16     HER WHEN I WAS LITTLE, I USED TO SIT BY HER AND I USED TO, YOU

17     KNOW, MASSAGE HER HAND, PLAY WITH HER JEWELRY, YOU KNOW, AND

18     THAT'S WHAT I WANT FOR MY DAUGHTER.  I WANT HER TO BE ABLE TO

19     KNOW MY HAND AND KNOW THAT IT'S GOING TO BE THERE WITH HER.

20     I'M VERY BLESSED TO HAVE A BEAUTIFUL DAUGHTER TRINITTI.  HER

21     SENSE OF HUMOR IS JUST BEYOND HER AGE.  YOU KNOW, I'VE LET HER

22     DOWN.  I HAVEN'T BEEN THE MOTHER THAT I KNOW I CAN BE, AND

23     SHE'S INNOCENT IN ALL OF THIS.

24          I REMEMBER AT CRASH WHEN SHE CAME TO VISIT ME, SHE --

25     RIGHT BEFORE SHE LEFT SHE GOT ME AND SHE SAID THAT SHE HAD LEFT

1    SOMETHING BEHIND, AND IN ACTUALITY WHEN I WENT IT WAS JUST SO

2    THAT SHE COULD SPEND SOME TIME JUST ME AND HER.  THERE WERE

3    MULTIPLE TIMES TO THE BATHROOM WHERE SHE JUST DANCED DOWN THE

4    HALLWAY, YOU KNOW, JUST TO BE THERE WITH ME INDEPENDENTLY.  MY

5    DAD ALWAYS TELLS ME HE'LL LOOK AT HER AND HE KNOWS WHEN SHE'S

6    THINKING OF ME, AND THAT TOUCHES MY HEART BECAUSE SHE HAS THE

7    UNCONDITIONAL LOVE FOR ME.  THANK YOU.

8         THE COURT:  I APPRECIATE YOUR COMMENTS, MA'AM.  THANK

9    YOU.

10        MR. SAUSEDO.

11        MR. SAUSEDO:  AS THE COURT STATED, I DO THINK THIS IS A

12   TROUBLESOME CASE.  I PREPARED FOR THIS SENTENCING OVER AND

13   OVER.  THERE WAS A LOT OF MATERIALS.  THERE WAS A LOT OF

14   ACTIVITY THAT HAS OCCURRED POST-ARREST.

15        I THINK AS MOST STORIES START, IT'S GOOD TO START AT

16   THE BEGINNING.  HERE, OBVIOUSLY, MS. KOWNACKI WAS IMPORTING A

17   SIGNIFICANT QUANTITY OF NARCOTICS, EVEN IN A DISTRICT AS JADED

18   AS OURS, WHERE WE'RE ACCUSTOMED TO SEEING ASTRONOMICAL

19   QUANTITIES.  HERE WE THOUGHT IT WAS ALL METHAMPHETAMINE AND

20   HEROIN, IT TURNED OUT THAT IT WAS 4.4 KILOGRAMS OF

21   METHAMPHETAMINE, ALONG WITH 10 KILOGRAMS OF FENTANYL.

22        AT THE TIME I DIDN'T KNOW MUCH ABOUT FENTANYL.  I'VE

23   SUBSEQUENTLY VISITED A LAB, AND THE SERIOUSNESS OF THIS DRUG IS

24   UNDER-APPRECIATED, AS SOON AS THERE'S A FINDING, PRESUMPTIVE

25   TEST OF FENTANYL IN THE LAB, THEY CLOSE THE LAB.  THEY PUT

1    HAZMAT SUITS ON AND TEST IT FURTHER.  THEY DON'T DO THAT WITH

2    METHAMPHETAMINE.  THEY DON'T DO THAT WITH OTHER DRUGS.  THAT'S

3    HOW SERIOUS THIS IS, AND THIS IS 10 KILOGRAMS OF THAT.

4         CLEARLY IT'S WHAT'S DRIVING THE GUIDELINES.  WE START

5    AT A BASE OFFENSE LEVEL 38, BASED ON THE TYPE AND QUANTITY IN

6    THIS CASE.

7         ADDRESSING THE ROLE DEPARTURE, THE UNITED STATES SHARES

8    STRONGLY THE SAME CONCERNS AND APPRECIATIONS THE COURT DID.

9    IT'S A DOUBLE-EDGED SWORD.  BASED ON HER OWN STATEMENTS, WE

10   KNOW THERE WAS SOME PRIOR CONDUCT HERE, SO WE BEGIN WITH THE

11   FACT SHE'S A COURIER.  WE DON'T ATTRIBUTE ANY ROLE WITHIN THE

12   DRUG TRAFFICKING ORGANIZATION OTHER THAN THAT, OR GREATER THAN

13   THAT, BUT AGAIN, EVEN THAT THE NINTH CIRCUIT HAS REPEATEDLY

14   HELD DOES NOT AUTOMATICALLY ENTITLE ONE TO A MINOR ROLE

15   ADJUSTMENT.

16        FRANKLY SPEAKING, MS. KOWNACKI MUST HAVE BEEN VERY GOOD

17   AT WHAT SHE DID, BASED ON THE NUMBER OF CROSSINGS SUCCESSFULLY,

18   AND WE KNOW BECAUSE OF HER CANDID STATEMENTS POST-ARREST.  THAT

19   CANNOT BE IGNORED.

20        BUT AS THE NINTH CIRCUIT SAID IN *HURTADO*, ANY ONE OF

21   THESE FACTS, THE FACT THAT SHE STANDS -- I KNOW THE STATEMENT

22   WAS MADE THAT SHE DOESN'T HAVE A PROPRIETARY INTEREST IN THE

23   DRUGS, AND WE OFTEN HEAR THAT.  THAT'S NOT THE STANDARD.  SHE

24   STOOD TO MAKE SIGNIFICANT MONEY, AS THE COURT NOTED, AND SHE

25   HAD MADE SIGNIFICANT CASH.  IN FACT, SHE HAD DONE IT BOTH

1    THROUGH PEDESTRIAN AND IN A VEHICLE.

2         I'LL ADDRESS IN A MINUTE THE ISSUES WITH REGARDS TO THE

3    DRUGS THAT HAVE ALREADY ENTERED THE UNITED STATES, BUT COMBINE

4    THE FACT THAT SHE'S BEING PAID, SHE WAS THE DRIVER, SHE -- YES,

5    MAYBE WORKING AT THE BEHEST OF OTHERS, BUT THE NINTH CIRCUIT

6    SAID THAT IS ONLY A FACTOR.  COMBINE THAT WITH THE MONEY SHE

7    STOOD TO MAKE HERE, WE DON'T FEEL ROLE WAS APPROPRIATE.

8         AGAIN, THE FACT THAT EVEN UNDER THE NEW GUIDELINES THAT

9    WERE ENACTED AND AMENDED AS OF LAST WEEK, THE UNITED STATES

10   TAKES THE POSITION THAT THOSE GUIDELINES NOT ONLY ARE

11   CONSISTENT WITH *HURTADO* BUT THEY SUPPORT *HURTADO*.  IT LOOKS AT

12   THE TOTALITY OF CIRCUMSTANCES, WEIGHING A LOT OF FACTORS TO

13   THEN DETERMINE WHETHER OR NOT ONE CAN PROVE THEY'RE

14   SIGNIFICANTLY OR SUBSTANTIALLY LESS CULPABLE THAN THE AVERAGE

15   PARTICIPANT.

16        HERE WE HAVE PEOPLE THAT ARE THE KINGPINS AT THE TOP.

17   WE HAVE PEOPLE THAT ARE MERELY LOADING THE DRUGS, AND ALTHOUGH

18   SHE MAY BE A COG IN A WHEEL, AS THE NINTH CIRCUIT SAID, AND

19   JUDGE SILVERMAN WRITING, SHE IS AN ESSENTIAL COG.

20        AS WE MOVE DOWN, WE DO AND STAND BY OUR RECOMMENDATION

21   FOR ACCEPTANCE, WHICH IS ALSO SOMETHING THAT I THINK WAS CALLED

22   INTO QUESTION BASED ON HER ABSCOND, BUT WE STAND BY THAT, AND

23   FAST-TRACK, SO WE'RE AT A RANGE AT 151 TO 188 MONTHS.

24        IT CAN'T BE SAID ENOUGH THAT THIS GUIDELINE RANGE IS

25   THAT HIGH BECAUSE OF THE SERIOUSNESS OF THE OFFENSE.  THIS IS A

1    SERIOUS OFFENSE.  WE HAVE A MAJOR DRUG PROBLEM IN THIS COUNTRY,

2    AND I KNOW THAT WE OFTEN HEAR ARGUMENTS ABOUT WHAT'S GOING ON

3    IN D.C., CONGRESSIONAL LEGISLATION AND SO FORTH.  I

4    RESPECTFULLY DISAGREE WITH THE NOTION THAT WE HAVE A MAJOR DRUG

5    PROBLEM SO LET'S LIGHTEN THE SENTENCES.  THAT'S GOING TO

6    SOMEHOW SOLVE THIS DRUG PROBLEM.

7         I UNDERSTAND THAT 72 MONTHS IS A SIGNIFICANT SENTENCE

8    FOR SOMEBODY WITH A BRIGHT FUTURE, WHO, AFTER HAVING AN

9    OPPORTUNITY TO MEET MS. KOWNACKI FOR AN EXTENDED PERIOD OF

10   TIME -- I LIKE TO THINK THAT I HAVE A GOOD SENSE OF PEOPLE.

11   SHE HAS A GOOD HEART, AND SHE HAS A PROMISING FUTURE.  IT'S

12   WITHOUT DISPUTE.  I THINK EVERY CASE PULLS AT THE HEART, AND

13   ESPECIALLY THIS ONE.  THIS IS A TROUBLING CASE.

14        CLEARLY THE REASON THE PENALTIES ARE SO HIGH IN THIS

15   COUNTRY IS PEOPLE LIKE MS. KOWNACKI.  ONCE YOU GET ADDICTED TO

16   THIS POISON IT DESTROYS.  IT REMOVES LIFE.  YOU DON'T EVER SEE

17   AN OLD METH ADDICT BECAUSE IT KILLS THEM.  THEY DIE.  WHETHER

18   IT'S OVERDOSE OR WHATEVER COMES WITH THE ADDICTION, THEY DIE,

19   AND THAT'S WHY THE PENALTIES ARE SO SEVERE.

20        WHICH BRINGS ME BACK TO THE POINT THAT 72 MONTHS IS A

21   SIGNIFICANT SENTENCE.  IT'S HALF OF THE GUIDELINE RANGE THOUGH.

22   SHE RECEIVES A BENEFIT OF I'M CUTTING THE GUIDELINE RANGE IN

23   HALF TO FASHION A SENTENCE.  I MEAN, I THINK I HAD ENVISIONED A

24   SENTENCE SOMETHING ALONG THESE LINES PRIOR TO THE ACTIVITY WHEN

25   SHE ABSCONDED.  IT CALLED INTO QUESTION MY RECOMMENDATION A

1    LITTLE BIT, BUT I STAND BY IT.  I STILL THINK IT'S THE

2    APPROPRIATE SENTENCE.  IT'S A SIGNIFICANT SENTENCE.  I DON'T

3    DISPUTE THAT.

4         CLEARLY THERE'S A LONGSTANDING ADDICTION PROBLEM HERE

5    THAT NEEDS TO BE ADDRESSED.  THAT ONLY RESTS WITH MS. KOWNACKI.

6    SHE MUST MAKE THAT DECISION.  SHE HAS THE AMAZING SUPPORT OF A

7    GROUP OF INDIVIDUALS THAT I HAVE YET TO SEE IN ANY OF MY CASES,

8    SO SHE HAS THAT THERE.  I WOULD STRONGLY URGE HER TO TAKE

9    ADVANTAGE OF THAT.

10        IT WAS SOMEWHAT FRUSTRATING TO HEAR ONE DAY FROM I

11   BELIEVE OFFICER O'GORMAN, AND THEN MR. KIRBY, THAT SHE WAS

12   ACTING AS A MENTOR AT CRASH, AND THEN A FEW DAYS LATER SHE

13   BRINGS METHAMPHETAMINE INTO CRASH.  IT TOOK US BY SURPRISE.

14        ANOTHER REASON FOR THE REQUESTED VARIANCE IS THERE MAY

15   BE A PROCEDURAL -- FOR MS. KOWNACKI'S BENEFIT, I HOPE THERE IS,

16   MAY BE A PROCEDURAL RULE 35 MOTION FILED AT SOME POINT.  UP TO

17   DATE BASED ON HER VERY CANDID STATEMENTS, WE'VE BEEN ATTEMPTING

18   TO FOLLOW UP ON THOSE, AND IT OBVIOUSLY HASN'T LED TO ANYTHING

19   TO DATE, AND THAT'S WHY THERE'S NO MOTION BEFORE THE COURT, BUT

20   THERE WAS A LENGTHY, LENGTHY DEBRIEF IN WHICH MS. KOWNACKI

21   QUICKLY ACCEPTED RESPONSIBILITY FOR HER ACTIONS AND WENT

22   FURTHER, AND THAT'S ANOTHER REASON WHY THE UNITED STATES FEELS

23   THAT SOME COMBINATION FOR THAT.  I DON'T WANT TO LABEL IT AS

24   SUPER ACCEPTANCE, BUT THERE -- IT DID GO FURTHER THAN THE

25   STANDARD MEASURED DEBRIEF.

1        I WANT TO END WITH JUST A STATEMENT OF 72 MONTHS BEING

2    A BIG CHUNK OF HER LIFE, A BIG CHUNK OF HER LIFE BEING AWAY

3    FROM HER FAMILY.  IF WE ASSUME SIMILAR QUANTITIES IN THESE

4    PRIOR RUNS, THE QUANTITIES OF DRUGS THAT HIT THE STREET IN THIS

5    COUNTRY HAS AFFECTED TENS OF THOUSANDS OF PEOPLE.  IF ONE HIT

6    OF METHAMPHETAMINE IS HALF OF A GRAM, AND ON THIS LOAD WE HAVE

7    5 KILOGRAMS, THAT'S 50,000 HITS.  SO THE AMOUNT OF DRUGS -- AND

8    SO HOW MANY LIVES HAVE BEEN AFFECTED DIRECTLY BY MS. KOWNACKI

9    IS CONCERNING, AND THAT IS PRIMARILY WHERE THE UNITED STATES

10   STANDS ON THE 72 MONTHS AS IT CAME DOWN FROM THE GUIDELINE

11   RANGE, AND AGAIN WE DON'T BELIEVE 151 IS APPROPRIATE.  WE DO

12   THINK THAT'S TOO HIGH.  THAT IS TOO HIGH.  FRANKLY, THE

13   PARSIMONY PRINCIPLE WOULD BE VIOLATED AT THAT POINT.

14       THERE BECOMES A POINT WHERE THE BALANCING, AS THE COURT

15   KNOWS, WHERE ACCOUNTING FOR THE NATURE AND CIRCUMSTANCES OF THE

16   OFFENSE, THE PRIOR CONDUCT, THE POSITIVE EQUITIES IN MS.

17   KOWNACKI'S FAVOR, THERE'S A TIPPING POINT.  AND TO THINK THAT

18   THE TENS OF THOUSANDS OF LIVES THAT HAVE BEEN AFFECTED BY DRUGS

19   THAT WERE BROUGHT IN BY MS. KOWNACKI IS WHERE THE UNITED STATES

20   FEELS THAT THERE NEEDS TO BE JUST PUNISHMENT.  THERE NEEDS TO

21   BE THAT SENTENCE THAT WOULD PROMOTE RESPECT FOR THE LAW, TO

22   DETER OTHERS FROM DOING THIS CONDUCT, AND TO PROTECT THE

23   PUBLIC, AND TO AVOID UNWANTED SENTENCING DISPARITIES.

24       HAD THIS BEEN A ONE-TIME EVENT, WITH A SMALLER

25   QUANTITY, YES, MAYBE FOUR TO SIX MONTHS THAT I THINK MAYBE OR

1    THEREABOUTS IS APPROPRIATE, BUT, AGAIN, THE UNITED STATES DOES

2    NOT MAKE THE -- RECOMMEND THE SENTENCE LIGHTLY.  THERE ARE A

3    LOT OF POSITIVE THINGS FOR MS. KOWNACKI.  I DON'T WANT IT TO

4    COME OFF AS THE UNITED STATES IS IGNORING THAT.  I APPRECIATE

5    THAT, AND I DO THINK THAT THERE IS A LOT OF HOPE FOR MS.

6    KOWNACKI, BUT THERE NEEDS TO BE JUST PUNISHMENT FOR THE CRIME

7    THAT WAS COMMITTED, AND THE UNITED STATES STANDS BY THAT THE

8    3553 FACTORS SUPPORT A SENTENCE HALF OF WHAT THE GUIDELINES DO

9    OF 72 MONTHS, AND WE WOULD SUBMIT ON THAT.

10    THE COURT:  THANK YOU, MR. SAUSEDO.

11    MR. ENGLISH.

12    THE PROBATION OFFICER:  MARVIN ENGLISH, YOUR HONOR.  WE

13    STAND BY OUR RECOMMENDATION.  I WOULD NOTE JUST FOR THE COURT'S

14    CONVENIENCE THAT THE RDAP PROGRAM IS LOCATED ALSO AT THIS FCI

15    WASECA, W-A-S-E-C-A, AND IT IS IN MINNESOTA.  SO WE WOULD

16    RECOMMEND RDAP, YOUR HONOR.

17    I NOTICED THAT THERE WAS NO MENTAL HEALTH CONDITION.  I

18    WOULD RECOMMEND THAT IN ADDITION TO ALL THE ONES THAT ARE

19    STATED IN THE REPORT.

20    THE COURT:  VERY WELL.

21    THE PROBATION OFFICER:  THANK YOU, YOUR HONOR.

22    THE COURT:  THANK YOU.

23    ANYTHING ELSE, MR. KIRBY, OR IS THE MATTER SUBMITTED?

24    MR. KIRBY:  YOUR HONOR, THE MATTER IS SUBMITTED.  I

25    JUST WOULD NOTE THAT IT'S DIFFICULT THAT MS. KOWNACKI'S CANDOR

1    WITH PROBATION AND CANDOR WITH THE GOVERNMENT, AS FAR AS HOW

2    OFTEN SHE DID THIS, IS BEING USED AGAINST HER.  I THINK THAT'S

3    A LITTLE BIT TROUBLING.  SHE COULD HAVE SIMPLY SAID, "YEAH,

4    THIS IS THE FIRST TIME."  THEY WOULD HAVE NO EVIDENCE TO THE

5    CONTRARY, BUT SHE WAS CANDID WITH PROBATION.  SHE WAS CANDID

6    WITH THE GOVERNMENT.  I WOULD ASK THAT MR. SAUSEDO'S REMARKS AS

7    TO THE NUMBER OF TRIPS, AND THAT AS AN AGGRAVATING FACTOR, BE

8    TEMPERED SOMEWHAT BY THE FACT THAT SHE DIDN'T NEED TO TELL

9    ANYBODY ABOUT THAT.

10           THE COURT:  VERY WELL.  I APPRECIATE THAT.  I

11   UNDERSTAND YOUR CONCERN ABOUT IT.

12           WELL, WE'VE ALL ACKNOWLEDGED THAT THIS IS A DIFFICULT

13   AND TROUBLING CASE ON SO MANY LEVELS, MS. KOWNACKI.  TO SAY

14   THAT THIS IS AN UNFORTUNATE CIRCUMSTANCE IS A GROSS

15   UNDERSTATEMENT.  I HOPE FOR YOUR SAKE THAT WHAT YOU'RE GOING

16   THROUGH NOW DOES NOT DEFINE YOU, BUT THAT'S UP TO YOU, MA'AM.

17   THAT'S NOT UP TO ME.  IT'S NOT UP TO MR. KIRBY.  IT'S NOT UP TO

18   ALL THE WONDERFUL PEOPLE THAT CAME TO SUPPORT YOU.  THAT'S

19   TOTALLY UP TO YOU.

20           I WOULD SUGGEST TO YOU YOU DESERVE A BETTER LIFE THAN

21   THE ONE YOU'VE BEEN HAVING.  I WOULD SUGGEST TO YOU THAT YOUR

22   DAUGHTER DESERVES TO HAVE YOU IN HER LIFE IN A MEANINGFUL WAY,

23   BUT AGAIN, THAT'S GOING TO BE WITHIN YOUR CONTROL, NOT MINE.

24           SO MANY OF THE PEOPLE THAT ARE HERE TO SUPPORT YOU

25   CERTAINLY KNOW AN AWFUL LOT ABOUT THE CRIMINAL JUSTICE SYSTEM,

1     AND THEY KNOW THAT MY OBLIGATION IS TO COME UP WITH A SENTENCE

2     THAT IS SUFFICIENT BUT NOT GREATER THAN WHAT'S NECESSARY,

3     TAKING INTO ACCOUNT THE TOTALITY OF THE CIRCUMSTANCES THAT YOU

4     BRING BEFORE THE COURT.

5          THEY ALSO KNOW THAT I HAVE TO PREVENT SENTENCING

6     DISPARITIES.  I CAN'T TREAT PEOPLE THAT ARE SIMILARLY SITUATED,

7     -- WE KNOW THAT EVERYBODY IS UNIQUE BECAUSE MANY OF THE FOLKS

8     OUT HERE HAVE REPRESENTED PEOPLE, AS MR. KIRBY REPRESENTS YOU,

9     NOBODY'S IDENTICALLY SITUATED, BUT CIRCUMSTANCES CAN BE

10    SIMILAR, AND I HAVE TO AVOID SENTENCING DISPARITIES, THAT IS,

11    TREATING PEOPLE WHO ARE SIMILAR IN VERY DIFFERENT WAYS, AND SO

12    THAT'S ONE OF THE COURT'S OBLIGATIONS TODAY ALSO, MA'AM.

13         I HAVE TO PROMOTE RESPECT FOR THE LAW, AND I HAVE TO

14    DETER PEOPLE FROM COMMITTING THESE CRIMES.  IT'S WITH REGARD TO

15    THE LATTER TWO POINTS THAT THE GOVERNMENT'S POINT HAS TO BE --

16    IS WELL TAKEN, THAT WHAT YOU DID HERE, MA'AM, THE SUBSTANCES

17    THAT YOU BROUGHT IN AND THE QUANTITIES, WERE -- TO SAY THAT

18    THEY'RE HORRIFIC SUBSTANCES AND CREATE INCREDIBLE HARM IN THIS

19    COUNTRY IS AN UNDERSTATEMENT.

20         SO THAT'S NOT TO TAKE AWAY THE FACT OF THE POSITIVE

21    THINGS YOU BRING BEFORE THE COURT.  YOU'RE AN INTELLIGENT

22    WOMAN.  YOU'RE YOUNG -- I SEE 18 AND 19-YEAR OLDS, SO I DON'T

23    CONSIDER YOU ALL THAT YOUNG, BUT RELATIVELY SPEAKING YOU'RE A

24    YOUNG WOMAN, AND YOU'VE GOT A BRIGHT FUTURE, PROVIDED THAT YOU

25    DEAL WITH THIS SITUATION IN THE APPROPRIATE WAY AND TAKE

1   ADVANTAGE OF WHAT'S GOING TO BE PROVIDED TO YOU.

2        THE BIGGEST OBSTACLE YOU'LL HAVE, MA'AM, IS THE

3   ADDICTION.  WHATEVER PERIOD OF TIME THE COURT IMPOSES BY WAY OF

4   CUSTODIAL TIME, YOU WILL GO INTO THE RESIDENTIAL DRUG AND

5   ALCOHOL ABUSE TREATMENT PROGRAM, WHICH IS ONE OF THE BEST

6   RESIDENTIAL TREATMENT PROGRAMS IN THE COUNTRY.  IT WILL PROVIDE

7   YOU THE RESOURCES TO STAY CLEAN AND SOBER AND TO MAKE BETTER

8   DECISIONS WHEN YOU GET OUT.

9        I'LL ALSO IMPOSE A SIMILAR CONDITION FOR YOUR

10  SUPERVISED RELEASE PERIOD TO HELP YOU, BECAUSE I HOPE YOU

11  UNDERSTAND THAT EVERY DAY FOR THE REST OF YOUR LIFE STAYING

12  CLEAN AND SOBER IS WHAT'S GOING TO BE REQUIRED OF YOU, NOT TO

13  SPEND YOUR LIFE IN CUSTODY, BUT YOU ALSO HAVE TO KNOW THAT

14  THAT'S NOT EASY.  I CAN SIT HERE AND I CAN SAY, "MS. KOWNACKI,

15  STAY CLEAN AND SOBER, IT'S IN YOUR BEST INTERESTS," BUT YOU

16  HAVE TO FIGHT EXTRAORDINARILY HARD TO DO THAT.  WHEN TOUGH

17  TIMES HIT, AND TOUGH TIMES WILL HIT, THERE WILL BE OTHER BAD

18  MOMENTS IN YOUR LIFE, MS. KOWNACKI, BECAUSE THAT'S THE WAY LIFE

19  IS, YOU CAN'T REVERT BACK TO A SUBSTANCE.

20       AND THE ABILITY TO TURN ELSEWHERE, TO TURN TO ONE OF

21  THE PEOPLE IN THE AUDIENCE HERE, TO TURN IN ANOTHER DIRECTION,

22  TO THINK OF YOUR DAUGHTER AND HER NEED TO BE WITH YOU, WHATEVER

23  YOU NEED TO DO, MA'AM, IT CAN'T BE REVERTING TO THE ADDICTION.

24       SO I UNDERSTAND ALL OF THIS.  I'M GOING TO CALCULATE

25  THE GUIDELINES, AND I'M GOING TO EXERCISE MY DISCRETION UNDER

1    3553(A) AND HOPEFULLY COME UP WITH A SENTENCE THAT'S SUFFICIENT

2    BUT NOT GREATER THAN NECESSARY, TAKING INTO ACCOUNT ALL OF

3    THESE CIRCUMSTANCES, MA'AM.

4        I HAVE SPENT A LOT OF TIME THINKING ABOUT YOU.  I READ

5    YOUR LETTER A COUPLE OF TIMES.  I READ YOUR FATHER'S LETTER A

6    COUPLE OF TIMES.  ALL THE LETTERS AND SUPPORTING DOCUMENTS THAT

7    CAME IN, I WENT THROUGH ON MORE THAN ONE OCCASION, MA'AM.

8        I THINK YOU'VE LEARNED THE HARD WAY THAT WHEN YOU'RE

9    TERRIFIED, AND WHEN YOU'RE SCARED, RUNNING AWAY DOESN'T COUNT.

10   IT'S LIKE A HIT AND RUN ACCIDENT.  SOMEBODY WHO HITS SOMEBODY

11   COULD JUST HAVE A TRAFFIC TICKET, IF EVEN THAT, BUT WHEN THEY

12   RUN AWAY THE CRIME GETS MUCH WORSE.  YOU WERE IN A SITUATION

13   WHERE THE GUIDELINE RANGE SCARED YOU, AND I CAN UNDERSTAND

14   THAT, IT WOULD SCARE ANYBODY, BUT RUNNING AWAY MADE IT WORSE

15   AND I THINK CAUSED EVERYBODY, I THINK, TO RAISE THEIR

16   RECOMMENDATIONS TO A LARGE EXTENT.

17       IN ANY EVENT, LET ME BEGIN BY MAKING THE FINDINGS, MS.

18   KOWNACKI, AND I WILL EXPLAIN AS I GO THROUGH THIS.  THE BASE

19   OFFENSE LEVEL IS A 38.  BECAUSE OF IMPORTATION OF METH, I'M

20   GOING TO ADD A PLUS 2.  AS I'VE INDICATED, LOOKING AT ALL THE

21   FACTS IN YOUR CASE, I DON'T BELIEVE MINOR ROLE IS APPROPRIATE

22   HERE AND I'M NOT GOING TO GIVE MINOR ROLE, BUT I HAVE SAID I

23   WILL EXERCISE DISCRETION IN THIS MATTER.

24       YOU'VE ACCEPTED RESPONSIBILITY HERE, AND THAT'S A

25   3-POINT REDUCTION, ALWAYS THE BETTER COURSE OF CONDUCT, MS.

1    KOWNACKI, WHEN WE MAKE A HORRIBLE CHOICE SUCH AS THIS ONE.

2    I WANT YOU TO UNDERSTAND, MA'AM, AS I GO THROUGH THIS

3    CALCULATION I'M EXERCISING DISCRETION.  PROBATION SAYS YOU

4    HAVEN'T ACCEPTED RESPONSIBILITY.  THEY DON'T GIVE YOU THE

5    3 POINTS IN THEIR CALCULATION.  AGAIN, I WANT YOU TO UNDERSTAND

6    IT'S NOT AN UNREASONABLE POSITION GIVEN YOUR POST-ARREST

7    CONDUCT IN THIS CASE WHERE YOU LEFT AND ABSCONDED.  I DO THINK

8    YOU DESERVE THE ACCEPTANCE AT THIS JUNCTURE, AND I'M GIVING YOU

9    THAT.

10    MY TOTAL OFFENSE LEVEL IS NOW A 37.  YOU'VE GOT 3

11    CRIMINAL HISTORY POINTS.  YOU'RE IN CRIMINAL HISTORY

12    CATEGORY 2, AND THAT'S THE RANGE OF IMPRISONMENT OF 235 TO

13    240 MONTHS BECAUSE IT'S MAXED OUT AT THAT POINT.  THE RANGE

14    ACTUALLY GOES HIGHER.

15    YOU'RE ENTITLED TO A 4-POINT REDUCTION FOR FAST-TRACK.

16    I'M CERTAINLY GOING TO GIVE YOU THAT, MS. KOWNACKI.  THAT TAKES

17    US DOWN TO A TOTAL OFFENSE LEVEL OF 33.

18    I'M GOING TO TAKE A 3-POINT REDUCTION FOR COMBINATION

19    OF CIRCUMSTANCES, WHICH TAKES ME DOWN TO A TOTAL OFFENSE LEVEL

20    OF 30 AND A RANGE OF 108 TO 135 MONTHS.

21    NOW, I'VE INDICATED THAT I'M GOING TO UTILIZE THE

22    3553(A) FACTORS BECAUSE EVEN THOUGH MY CALCULATION'S BELOW THE

23    GOVERNMENT'S AT THIS JUNCTURE, 108 MONTHS IS TOO LONG, MA'AM.

24    IT'S MORE THAN SUFFICIENT.  SO AGAIN UNDER THE 3553(A) FACTORS,

25    I'M LOOKING AT THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

1    I'M LOOKING AT YOUR HISTORY AND YOUR CHARACTERISTICS.  I'M

2    LOOKING AT THE NEED TO PROMOTE RESPECT FOR THE LAWS IN THIS

3    COUNTRY AND FOR JUST PUNISHMENT.  IT ALSO HAS TO REFLECT THE

4    SERIOUSNESS OF THIS OFFENSE.  I HAVE TO PROTECT THE PUBLIC.  I

5    HAVE TO AVOID UNWARRANTED SENTENCING DISPARITIES, AND THOSE ARE

6    EVERYTHING THAT I TAKE INTO ACCOUNT, MA'AM, IN DOING THIS.

7          I'M GOING TO GO DOWN APPROXIMATELY 5 LEVELS, IF ANYBODY

8    IS LOOKING AT THE CHARTS, AND I'M COMING UP WITH -- I'M SAYING

9    THIS SO PEOPLE UNDERSTAND WHAT I'M DOING HERE.  BASICALLY IT'S

10   PURSUANT TO 3553(A), AND I'M GOING TO IMPOSE A SENTENCE OF

11   63 MONTHS IN THE CUSTODY OF THE BUREAU OF THE PRISONS.  I

12   BELIEVE THAT'S SUFFICIENT BUT NOT GREATER THAN WHAT'S

13   NECESSARY, MS. KOWNACKI, GIVEN THE FACTS AND CIRCUMSTANCES OF

14   YOUR CASE.

15         NOW, WHILE YOU'RE IN CUSTODY, YOU CAN DO A NUMBER OF

16   THINGS.  I THINK THE MOST IMPORTANT THING IS TO GET YOU INTO

17   THE RDAP PROGRAM.  I WILL GET YOU INTO THAT PROGRAM.  I WILL

18   DESIGNATE, WASECA, MINNESOTA.  YOUR COUNSEL TELLS ME THEY DO

19   HAVE THE RDAP PROGRAM.  THAT WILL GIVE YOU THE ABILITY TO

20   WITHSTAND FALLING BACK INTO THE ADDICTION THAT YOU SUFFER FROM,

21   MA'AM, AND PROBABLY CONTINUE TO SUFFER FROM, BUT IN ADDITION,

22   IF YOU SUCCESSFULLY COMPLETE THAT PROGRAM, THERE WILL BE SOME

23   CUSTODIAL CREDIT AGAINST THE TIME YOU NEED TO SERVE.

24         I NOTE THAT YOU HAVE A HIGH SCHOOL DIPLOMA; IS THAT

25   CORRECT, MA'AM?

1          THE DEFENDANT:  YES.

2          THE COURT:  HAVE YOU EVER TAKEN ANY COLLEGE COURSES?

3          THE DEFENDANT:  I ALMOST HAVE MY ASSOCIATES IN

4    COMMUNICATION.

5          THE COURT:  WHILE YOU'RE IN CUSTODY, MA'AM, YOU COULD

6    PROCEED AND YOU COULD TAKE -- YOU COULD TAKE FURTHER COLLEGE

7    CREDITS.  YOU COULD GET A FOUR-YEAR DEGREE WHILE YOU'RE THERE.

8    THERE'S ALSO VOCATIONAL TRAINING.  YOU NEED TO MAKE PRODUCTIVE

9    USE OF YOUR TIME BECAUSE WHEN YOU GET OUT YOU NEED TO STAY,

10   NUMBER ONE, CLEAN AND SOBER.  NUMBER TWO, SUPPORT YOURSELF IN A

11   LEGITIMATE WAY AND YOUR DAUGHTER.  THOSE WILL BE THE THINGS YOU

12   DO WHILE YOU'RE IN CUSTODY.

13         I'M GOING TO IMPOSE THREE YEARS OF SUPERVISED RELEASE

14   FOLLOWING THIS TIME IN CUSTODY, AND THAT'S A TIME THAT YOU CAN

15   THINK OF AS SIMPLY WHEN YOU'RE NOT TO VIOLATE ANY LAWS, STATE,

16   FEDERAL OR LOCAL.  IN ADDITION, THERE ARE SOME SPECIAL

17   CONDITIONS THAT ARE GOING TO APPLY:

18         THE FIRST IS YOU'RE NOT TO ENTER OR RESIDE IN MEXICO

19   WITHOUT PERMISSION OF THE COURT OR PROBATION.

20         THE SECOND IS A CONTINUATION OF THE DRUG AND ALCOHOL

21   ABUSE TREATMENT PROGRAM.  YOU'RE GOING TO CONTINUE IN A PROGRAM

22   THAT'S GOING TO INCLUDE TESTING AND COUNSELING AS DIRECTED BY

23   PROBATION, AND WE'LL RELEASE THE TREATMENT PROVIDER THE

24   INFORMATION FROM THE PRESENTENCE REPORT, AND YOU MAY BE

25   REQUIRED TO CONTRIBUTE TO THE COST OF THIS, BUT ONLY IF YOU

1    HAVE THE ABILITY TO DO SO.

2         THE THIRD CONDITION IS THAT YOU REPORT ALL VEHICLES

3    THAT YOU OWN OR OPERATE OR IN WHICH YOU HAVE AN INTEREST TO

4    PROBATION.

5         THE NEXT CONDITION IS A SEARCH CONDITION, MS. KOWNACKI,

6    THAT YOU SUBMIT YOUR PERSON, YOUR PROPERTY, YOUR RESIDENCE,

7    YOUR OFFICE, YOUR VEHICLE TO A SEARCH CONDUCTED BY PROBATION,

8    PROVIDED THE SEARCH IS DONE AT A REASONABLE TIME, IN A

9    REASONABLE MANNER, BASED ON A REASONABLE SUSPICION OF

10   CONTRABAND OR EVIDENCE OF A VIOLATION OF A CONDITION OF YOUR

11   RELEASE.  IF YOU DO NOT AGREE TO A SEARCH, THAT CAN BE GROUNDS

12   FOR REVOKING YOUR PROBATION.  WHOEVER LIVES WITH YOU NEEDS TO

13   KNOW THAT THE HOME IS SUBJECT TO SEARCH.

14        I'M ALSO GOING TO INCLUDE THE STANDARD MENTAL HEALTH

15   CONDITION AS SUGGESTED, AND I THINK IT'S A GOOD SUGGESTION BY

16   PROBATION.

17        I'M NOT GOING TO IMPOSE A FINE.  AGAIN, I WANT YOU TO

18   UNDERSTAND THAT IT WAS NOT UNREASONABLE OF PROBATION TO SUGGEST

19   THAT.  I'M GOING TO IMPOSE $100 AS A SPECIAL ASSESSMENT, AND

20   YOU CAN WORK THAT OFF WHILE YOU'RE IN CUSTODY.

21        IN YOUR PLEA AGREEMENT, MS. KOWNACKI, ON PAGES 11 AND

22   12, YOU GAVE UP YOUR RIGHT TO APPEAL OR COLLATERALLY ATTACK THE

23   JUDGMENT IN THIS CASE AND THE SENTENCE THAT I IMPOSED.  DO YOU

24   UNDERSTAND THAT?

25        MR. KIRBY:  YOUR HONOR, ACTUALLY, BY TERMS OF THE

1    GOVERNMENT'S PLEA AGREEMENT SHE DOES HAVE A RIGHT TO APPEAL ON

2    THE MINOR ROLE ISSUE.

3           THE COURT:  ON THE MINOR ROLE ISSUE?

4           MR. KIRBY:  ON THE MINOR ROLE.

5           THE COURT:  THAT'S FINE.

6           MR. KIRBY:  YOUR HONOR, I'LL FILE THE NOTICE.

7           THE COURT:  OKAY.  VERY WELL.

8           SO YOU HAVE THE APPELLATE RIGHT WITH REGARD TO THE FACT

9    THAT THE COURT DID NOT GIVE YOU MINOR ROLE, MA'AM; DO YOU

10   UNDERSTAND THAT?

11          THE DEFENDANT:  YES, MA'AM.

12          THE COURT:  WE'RE NOW GOING TO GIVE YOU COPIES OF THE

13   CONDITIONS THE COURT IMPOSED.  THEY'RE PRINTED FOR YOU.  KEEP

14   THAT PAPERWORK, MS. KOWNACKI, IT'S IMPORTANT FOR YOUR

15   REFERENCE.

16          IS THERE ANYTHING, MR. SAUSEDO, MR. KIRBY, MR. ENGLISH

17   THAT THE COURT DID NOT COVER?

18          MR. KIRBY:  I DON'T BELIEVE SO, YOUR HONOR.

19          MR. SAUSEDO:  NO, YOUR HONOR.  THANK YOU.

20          THE COURT:  MS. KOWNACKI, MAKE GOOD USE OF THE PROGRAMS

21   THAT ARE AVAILABLE TO YOU WHILE YOU'RE IN CUSTODY.  THEY'RE

22   EXCELLENT PROGRAMS.  THEY CAN BE VERY, VERY HELPFUL TO YOU.

23   YOU KNOW WHAT YOUR NUMBER ONE ISSUE IS, AND THE PROGRAM IN THE

24   FEDERAL BUREAU OF THE PRISONS IS ONE OF THE BEST IN THE

25   COUNTRY.  I WISH YOU WELL.  I HOPE THAT I CAN HEAR FROM MR.

1   KIRBY THAT YOU'RE DOING WELL AND THAT THIS DOES NOT DEFINE YOU.

2   I WOULD HOPE THAT IT DOESN'T, THAT YOU COME OUT WITH SOME

3   POSITIVE THINGS FROM YOUR TIME IN CUSTODY, MA'AM.  I DO WISH

4   YOU WELL.

5          I WANT TO THANK EVERYBODY WHO CAME TODAY TO BE

6   SUPPORTIVE.

7          THE DEFENDANT:  THANK YOU, YOUR HONOR.

8          MR. KIRBY:  THANK YOU, YOUR HONOR.

9   (THE SENTENCING HEARING CONCLUDED.)

10

11

12

13                 C E R T I F I C A T E

14

15          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
    QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
16  STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
    ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
17  ABOVE-ENTITLED MATTER ON NOVEMBER 10, 2015; AND THAT THE FORMAT
    USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
18  STATES JUDICIAL CONFERENCE.

19

20  DATED:  DECEMBER 17, 2015      /S/ GAYLE WAKEFIELD
                                   GAYLE WAKEFIELD, RPR, CRR
21                                 OFFICIAL COURT REPORTER

22

23

24

25